**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **CHADWICK DALE COLLINS,** ) | |
| **ID # 1659943,** ) | |
| Petitioner, ) | |
| vs. ) | No. 3:14-CV-2730-D (BH) |
| ) | |
| **LORIE DAVIS, Director,** ) | Referred to U.S. Magistrate Judge |
| **Texas Department of Criminal** ) | |
| **Justice, Correctional Institutions Division,** ) | |
| Respondent. ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order 3-251*, this case has been referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the petition for writ of habeas corpus under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**I. BACKGROUND**

Chadwick Dale Collins (Petitioner) challenges his conviction for aggravated robbery in Cause No. F08-61130-I. The respondent is Lorie Davis, Director of TDCJ-CID (Respondent).

**A.    Trial and Appeal**

On November 11, 2008, the State indicted Petitioner for aggravated robbery in No. F09-52630. (Doc. 19-12 at 6[1].) He pleaded not guilty, and the case was tried before a jury in the Criminal District Court #2 of Dallas County, Texas, on July 19-22, 2010. (Doc. 19-2 at 1.)

*1.    Voir Dire*

During a break in voir dire, defense counsel put Petitioner's sworn testimony into the record. Petitioner testified that he understood he would be convicted, that counsel could contest his guilt, but that he had been caught in the act of fleeing from the crime. (Doc. 19-3 at 17-18.) He

---

[1] Page citations refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

understood that counsel's strategy was to put him at the mercy of the jury instead of insulting its intelligence by trying to act like he was not involved in the crime. (*Id.*) Consistent with this strategy, counsel told the jury venire that Petitioner was guilty, and that he anticipated that the jury would return a verdict of guilty. (Doc. 19-3 at 58-59.) The only issue would be punishment. (*Id.* at 59.) Counsel explained punishment concepts and asked the venire panel questions focusing on punishment. (*Id.* at 59-95.)

Before the presentation of evidence, counsel again put Petitioner's testimony into the record. Petitioner testified that he understood that the case came down to the punishment he would receive. (Doc. 19-4 at 7.) He had discussed the case with counsel, and he understood that guilt or innocence was not a factor; the issue was punishment. (*Id.* at 8-9.) Petitioner wanted a plea bargain, but he would not accept the state's offer of a 40-year sentence. (*Id.* at 9-10.) He wanted to go forward with a trial and was satisfied with counsel's efforts on his behalf. (*Id.* at 10.)

### 2. *Guilt Phase*

At the guilt-phase of the trial, the complainant testified that he was working at a gas station store on September 25, 2008. (Doc. 19-4 at 16-18.) That afternoon, he went to the bank, made a deposit, and withdrew cash and a bag of change for the store. (*Id.* at 18-23.) As he was driving back to the store, a purple van stopped in front him; he slammed the brake, and a black truck hit his car from behind. (*Id.* at 26-27.) A man carrying a gun came from the truck, broke the complainant's rear passenger window, and demanded the money. (*Id.* at 31-32.) The complainant gave the man one bag of money, and the man reached for the bag of change on the car seat. (*Id.* at 32.) The complainant left the car and ran across the street. (*Id.* 33.) The robber got into the purple van on the passenger side. (*Id.* at 27, 40.) The complainant saw a police officer, told him he had just been

robbed, and pointed out the purple van in which the robbers were fleeing. (*Id*. at 34.) The officer chased the purple van. (*Id*.) Later, the complainant identified Petitioner in a photo lineup as the man with the gun. (*Id*. at 117-18.) He did not identify Petitioner at trial.

During the chase, the van drove on the wrong side of the highway and clipped the side of a police car coming toward the van. (*Id*. at 46.) The police officer in that collision testified that Petitioner was driving the van. (*Id*. at 50.) Shortly thereafter, the van wrecked at a gas station. (*Id*. at 68.) Two men got out of the van and ran behind the gas station. (*Id*. at 61.) The man who had been driving the van jumped into the bed of a truck driven by a covert, plainclothes police officer who was following them, and the plainclothes officer detained the man. (*Id*. at 70-71.) The officer identified Petitioner as the man who drove the van and jumped into his truck. (*Id*. at 71-72.) The other man who got out of the van was also apprehended by officers nearby. (*Id*. at 72.) The bank bag with money, the rolls of coins, and a handgun were found in the van. (*Id*. at 92-93, 119.)

Another officer testified that the reports from the officers on the scene showed that Petitioner was the passenger in the van, the other man exited through the driver's door after the van wrecked, Petitioner also exited through the driver's door, and the driver's door was the only door open when officers inspected the van. (*Id*. at 121-23, 126-28.)

After the State rested its case during the guilt phase, counsel moved for a directed verdict on grounds that the State did not prove the offense occurred in Dallas County, and that there was no evidence that the complainant was in fear of serious bodily injury or death. (*Id*. at 135.) The motion was denied. (*Id*.)

Counsel again put Petitioner's testimony into the record. Petitioner stated he understood that there was not any issue about guilt, and he agreed that the strategy had been for counsel to inform

3

the jury in voir dire that Petitioner committed the crime. (*Id*. at 132.) He was not contesting his guilt. (*Id*. at 133-34.) He was satisfied with counsel's strategy to admit that he was guilty and to focus on punishment. (*Id*. at 134.)

In closing argument, counsel said he expected the jury would return a verdict of guilty. (*Id*. at 145.) The jury found Petitioner guilty.

### 3. *Punishment Phase*

During the punishment phase, the State presented evidence of Petitioner's prior convictions and of extraneous robberies during which the victims were robbed while leaving a bank. (Doc 19-4 at 169-72, 177.)

A witness testified that on August 29, 2008, she left the same bank as the complainant in this case after withdrawing money for her store. (*Id*. at 18.) A car hit her from behind, and a man got out of the car, broke a window in her car, and took her purse. (*Id*. at 20, 22.) She grabbed her purse, and the man pushed her to the ground. (*Id*. at 24.) She saw a metal object in his hand and thought it was a gun, but she did not see that it was a gun. (*Id*. at 24-25.) He returned to his car. (*Id*. at 25-26.) She got in front of his car, and he hit her with his car as he left. (*Id*.) She viewed a photo lineup but was unable to identify anyone. (*Id*. at 26.) A witness to the August 29 robbery testified about what he saw. He identified Petitioner in the photo lineup and in court as the robber. (*Id*. at 47-48.)

The victim of a robbery on September 5, 2008, testified that she was driving to her store after withdrawing money from the same bank as the complainant in this case. (*Id*. at 57-58.) A car hit her car from the back, and the truck in front of her also hit her car. (*Id*. at 58.) A man broke her car window, pointed a gun at her, and told her to give him the money. (*Id*.) The man got into the truck

and left.  (*Id*. at 62-63.)  She identified Petitioner in court as the robber.  (*Id*. at 62.)  She also identified him in a photo lineup.  (*Id*. at 65.)

On cross-examination, a detective testified that when Petitioner was arrested in this case, he had a window punch with him, which is a metal tool used to break a car window.  (*Id*. at 82-84.)

The State also presented evidence of an extraneous robbery that occurred on October 11, 2008, after Petitioner was released on bond in this case. (*Id*. at 72, 88.)  A couple withdrew money from a bank for their store.  (*Id*. at 88-90.)  The bank was not the same bank that the victims used in the charged crime in this case or in the other two extraneous robberies.  When they arrived at the store and got out of their car, a man grabbed the wife's purse.  (*Id*. at 91.)  They fought, but the man left with the purse.  (*Id*. at 91-92.)  He got into a truck driven by someone else and they drove away.  (*Id*. at 110.) They did not see a weapon.  (*Id*. at 100.)  They could not identify the robber.  (*Id*. at 98-99.)  He wore the same hat as the husband, and when he left he took the husband's hat instead of his own hat.  (*Id*. at 107, 112.)  The husband gave the robber's hat to the police.  (*Id*.)  DNA testing showed the DNA obtained from the hat was consistent with a mixture of at least three individuals.  (*Id*. at 147.)  Petitioner could not be excluded as a contributor to the DNA on the hat.  (*Id*.)  The probabilities of being a contributor were one in 335.9 thousand for Caucasians, one in 58.48 thousand for Blacks, and one in 175.4 thousand for Hispanics.  (*Id*. at 150.)

Counsel argued to the jury in the punishment phase that Petitioner did not drive the van that endangered an officer in this case.  (Doc. 19-6 at 44-45.)  He also argued that the State did not prove Petitioner had a gun in the August 29 robbery or that he committed the October 11 robbery.  (*Id*. at 44-51.)  He asked for a 15-year sentence, and the State asked for a life sentence.  (*Id*. at 42, 53.)  The jury assessed a 50-year sentence.  (*Id*. at 59.)

5

*4.     Appeal*

On direct appeal, Petitioner alleged that the evidence was insufficient to support the allegations in the State's notice of intent to enhance punishment, and that the trial court erred by refusing his request for a continuance and admitting extraneous offense evidence at the punishment phase. *See Collins v. State*, No. 05-10-01059-CR (Tex. App. – Dallas March 1, 2012). The judgment was affirmed. *Id*. He filed a petition for discretionary review (PDR) on May 11, 2012, which was refused. *Collins v. State*, PD-0353-12 (Tex. Crim. App. August 22, 2012). He did not file a petition for writ of certiorari with the Supreme Court.

**B.     State Habeas Proceedings**

Petitioner filed a state habeas application for each criminal case that was signed on April 19, 2013, and received by the state court on April 25, 2013. (Doc. 19-50 at 6, 17.) The state habeas court obtained an affidavit from defense counsel. (*Id*. at 97, 107.) The court issued findings of fact and conclusion of law on February 28, 2014. (*Id*. at 99.) On May 14, 2014, the Court of Criminal Appeals denied the state habeas application on the trial court's findings. (Doc. 19-52); *see Ex parte Collins*, No. WR-80,671-02 (Tex. Crim. App. May 14, 2014).

**C.     Substantive Claims**

On July 28, 2014, Petitioner mailed his federal habeas petition, which was received on July 30, 2014. (Doc. 2.) His memorandum setting out his grounds in detail with argument was received on September 14, 2014. (Doc. 13.) Petitioner raises the following grounds for relief:

His trial attorney provided ineffective assistance of counsel by:

-conceding his guilt even though he pled not guilty (ground one);

-failing to investigate, to prepare for trial, and to have a strategy (ground one);

6

-failing to challenge the photo lineup identification by the complainant that was done without counsel being present (ground two);

-failing to challenge the photo lineup identification that was done without counsel for an extraneous robbery (ground three); and

-failing to challenge or oppose the admission of testimony of another extraneous robbery when the victim did not identify him (ground four).

He also alleges that counsel's ineffectiveness was a constructive denial of counsel (ground five).

Respondent filed a response on December 19, 2014, and provided the state court records. (Doc. 25.) Petitioner filed an objection to the response on February 2, 2015, which is construed as a reply brief. (Doc. 27.) He filed a motion to amend on August 2, 2016, which is construed as a supplement to his reply brief.

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

7

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). As for the "unreasonable application" standard, a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence

8

presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner claims that his trial counsel was ineffective by (1) conceding his guilt even though he pled not guilty; (2) failing to challenge the photo lineup identification by the complainant without counsel being present; (3) failing to challenge the photo lineup identification for an extraneous robbery without counsel; and (4) failing to challenge or oppose the admission of testimony of another extraneous robbery when the victim did not identify him. He contends he was constructively denied counsel because counsel was not present for the photo lineups, conceded his guilt, interviewed no witnesses, conducted no investigation, and did not subject the State's case to meaningful, adversarial testing.

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, a movant must show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696. The Court may address the prongs

9

in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

**A.     *Cronic* Standard**

In *United States v. Cronic*, 466 U.S. 648, 654 (1984), the Supreme Court recognized that a defendant might be constructively denied counsel even though an attorney had been appointed to represent him. A constructive denial of counsel occurs in only a very narrow spectrum of cases where the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all. *Gochicoa v. Johnson*, 238 F.3d 278, 284 (5th Cir. 2000). Unless there is a constitutional error of such magnitude that "no amount of showing of want of prejudice would cure" the error, however, "there is generally no basis for finding a Sixth Amendment violation" in the absence of a showing of "how specific errors of counsel undermined the reliability of the finding of guilt." 466 U.S. at 659 & n.26. The presumed prejudice standard is reserved for "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified, such as (1) a "complete denial of counsel . . . at a critical stage" of the criminal proceedings; (2) a complete failure of counsel "to subject the prosecution's case to meaningful adversarial testing"; and (3) "circumstances [that] made it so unlikely that any lawyer could provide effective assistance". *See Cronic*, 466 U.S. at 658-662; *accord Bell v. Cone*, 535 U.S. 685, 695-96 (2002); *Austin v. Davis*, ___ F. App'x ___, No. 13–70024, 2016 WL 2619443 at *9 (5th Cir. May 6, 2016). The *Cronic* standard does not apply when defense counsel has merely failed to oppose the prosecution at specific points of the proceedings – it applies only when counsel has *entirely* failed to challenge the prosecution's case. *Bell*, 535 U.S. at 697. A petitioner has the burden to show that he was constructively denied counsel. *See Childress v. Johnson*, 103 F.3d 1221, 1228, 1231-32 (5th Cir. 1997).

Here, counsel made objections throughout the trial. He moved for an instructed verdict of not guilty. He contested punishment issues such as whether Petitioner drove the getaway vehicle that endangered police officers and the public, whether he committed one extraneous robbery, and whether he used a gun in another extraneous robbery. (Doc. 19-5 at 82-84, 98-101, 113-14, 137-39, 152-55, 157-58.) Counsel argued these matters to the jury. (Doc. 19-6 at 45-48, 50-51.) Petitioner has not shown a complete failure by counsel to test the State's case or that counsel failed to oppose the prosecution throughout the proceeding as a whole. *See Haynes v. Cain*, 298 F.3d 375, 380-81 (5th Cir. 2002) (counsel's concession of guilt in a strategic attempt to avoid the death penalty did not raise a presumption of prejudice under *Cronic*). He therefore has not demonstrated that he was constructively denied counsel such that the *Cronic* standard should be used in assessing counsel's performance. His claims should therefore be analyzed under the *Strickland* standard.

**B.**     *Strickland* **Standard**

To determine whether counsel's performance is constitutionally deficient under *Strickland,* courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." 466 U.S. at 689. To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Movants must "affirmatively prove prejudice." *Id.* at 693. The prejudice component "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would

11

likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96. One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations, furthermore, are insufficient to obtain federal habeas relief. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

### 1. *Concession of Guilt*

Petitioner contends counsel was ineffective because he conceded his guilt in voir dire and throughout the guilt phase, even though he pled not guilty.

In response to Petitioner's state habeas application, counsel submitted an affidavit. (Doc. 19-50 at 107.) It stated, "I discussed the case with [Petitioner] and we agreed that the best way to proceed was not to contest his guilt to the offense. I believed that this was a punishment case from the outset. [Petitioner] agreed with this trial strategy." (*Id.*) The state habeas court found the following:

> Counsel . . . put on the record that [Petitioner] had refused to cooperate with him prior to the day of jury selection. (RR-3: 8). Counsel stated that he and [Petitioner] had seen "eye-to-eye" on the issues of guilt or innocence. (RR-3: 8). [Petitioner] indicated he understood the case boiled down to the issue of punishment. (RR-3: 8). [Petitioner] agreed that he and counsel had spoken and there was no animosity between them. (RR-3: 10). [Petitioner] was satisfied with counsel's efforts on his behalf. (RR-3: 10).
> . . .
> Counsel, based on the evidence in this case, made a strategic decision to admit [Petitioner's] guilt and focus on punishment. After committing aggravated robbery, [Petitioner] was involved in a high speed chase with police. (RR-3; 51, 66). After striking (side-swiping) a police car, the vehicle [Petitioner] was in crashed into a large landscaping rock. (RR-3: 46-47, 50, 60, 68). [Petitioner] fled on foot and jumped into the bed of an undercover officer's truck. (RR-3: 51, 70). The officer

> got out of his truck and detained [Petitioner] at gun point until uniformed officers arrive to arrest him. (RR-3: 70-72.) Base on those facts, counsel "conceded" guilt. Counsel discussed this strategy with [Petitioner] prior to trial commencing. [Petitioner] did not oppose the decision. According to the "Bail Information Sheet" completed by a United States Marshal[], [Petitioner] was part of a criminal enterprise that robbed person leaving check cashing businesses and banks. It was estimated that he had stolen approximately $1,000,000. *See* Exhibit 1. Another "Bail Information Sheet" indicates that [Petitioner] was being investigated for 12 similar offenses. *See* Exhibit 2. [Petitioner] testified that he agreed with counsel's strategy to admit guilt. (RR-3: 132). [Petitioner] testified that he was admitting guilt. (RR-3: 133-134). [Petitioner] had discussed the strategy with counsel and was satisfied with that strategy. (RR-3: 136).

(*Id.* at 102.) The habeas court set out the *Strickland* standard and found that counsel's performance was not deficient. (*Id.* at 101, 105.)

The decision to plead guilty must be the defendant's. *Florida v. Nixon*, 543 U.S. 175, 187 (2004). A concession of guilt following a plea of not guilty is not the functional equivalent of a guilty plea. *Id.* at 188. When defense counsel concedes guilt, the defendant retains the rights of an accused in a criminal trial. *Id.* The State must prove the offense beyond a reasonable doubt, counsel can seek to exclude evidence, and counsel can focus on the punishment phase. *Id.* When defense counsel makes the strategic decision to concede guilt, counsel must explain that strategy to the defendant. *Id.* at 189.

Here, based on the State's evidence, counsel made the strategic decision to concede guilt and focus on punishment given that Petitioner was arrested while trying to flee the crime. Petitioner has not shown counsel was ineffective regarding this strategy. *See Haynes v. Cain*, 298 F.3d 375, 383 (5th Cir. 2002) (no ineffective assistance of counsel for conceding guilt and focusing on punishment); *Massoth v. Taylor*, Nos. H-09-0186, H-09-0355, 2010 WL 598757 at *15 (S.D. Tex. February 17, 2010) (concession strategy and focusing on punishment was not ineffective assistance). Counsel and Petitioner discussed that strategy, and Petitioner agreed with the strategy on the record.

He has not overcome the "strong presumption of verity" given to his sworn testimony that he agreed with that strategy. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

Petitioner has not shown that the state court's resolution of this claim was an unreasonable application of federal law or an unreasonable determination of the facts. This ground for relief should be denied.

### 2.   *Failure to Investigate, Prepare, and Have a Strategy*

Petitioner contends counsel failed to investigate and prepare for trial and he had no strategy.[2] (Doc. 13 at 24.)

Counsel has a duty to make reasonable investigations or to make a reasonable decision that particular investigations are unnecessary. *See Moore v. Johnson*, 194 F.3d 586, 616 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 691). To establish that an attorney was ineffective for failure to investigate, a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial. *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005).

Petitioner contends counsel only met with him twice. However, counsel stated on the record that until the day before trial began, Petitioner refused to cooperate with him, but they had always agreed on the issue of guilt or innocence. (Doc. 19-4 at 8.) Since then, they had discussed the different aspects of the case. (*Id.*) As discussed, counsel's strategy was to concede guilt and focus

---

[2] Respondent asserts that Petitioner both failed to exhaust and is procedurally barred from raising this claim. "[N]otwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State", courts may deny a habeas petition on the merits. 28 U.S.C. § 2254(b)(2); *see also Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998) (reaffirming pre-AEDPA law that "when, as in this case, exhaustion is not waived, courts have the 'discretion in each case [under § 2254(b)(2)] to decide whether the administration of justice would be better served by insisting on exhausting or by reaching the merits of the petition forthwith'"). A court may also deny a claim on its merits in lieu of applying a procedural bar. *See Braswell v. Dretke*, 2005 WL 1058865 (N.D. Tex. May 2, 2005). In this case, the administration of justice would be better served by bypassing the procedural issues and reaching the merits of the claim.

on punishment. Counsel's state habeas affidavit states he reviewed pretrial discovery provided by the State. The record shows counsel was aware of the State's evidence, which was the basis of his strategy for conceding guilt and focusing on punishment.

Petitioner has not identified any evidence of which counsel was not, but should have been, aware. He has not shown counsel was ineffective regarding investigation, preparation, or strategy.

### 3. *Failure to Challenge Photo Lineup Identifications*

In two grounds, Petitioner contends counsel failed to challenge the photo lineup identifications because he counsel was not present, and that his Sixth Amendment right to counsel was violated.

There is no Sixth Amendment right to the presence of counsel at a photo lineup. *United States v. Ash*, 413 U.S. 300, 321 (1973); *See also Andrade-Castaneda v. United States*, No. 3:09-CV-630-P, 2010 WL 27932 at *4 (N.D. Tex. January 5, 2010). Counsel was not ineffective for failing to raise a meritless argument. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

Petitioner has not shown that the state court's resolution of this claim was an unreasonable application of federal law or an unreasonable determination of the facts. This ground for relief should be denied.

### 4. *Failure to Challenge Extraneous Robbery*

Petitioner asserts counsel failed to oppose the admission of evidence of the October 11 extraneous robbery. He argues that the alleged victims could not identify him and the DNA evidence did not show he committed the offense.

An extraneous offense is admissible under article 37.07 if the evidence is such that a jury could reasonably find beyond a reasonable doubt that the defendant committed it. *Harrell v. State*,

15

884 S.W.2d 154, 160-61 (Tex. Crim. App. 1994).

> Counsel's state habeas affidavit stated:
>
> As to the extraneous offense of [the October 11 robbery], the perpetrator whom neither [witness] could identify, dropped a baseball cap as he fled the scene. The baseball cap was subjected to DNA testing and [Petitioner] could not be excluded as a contributor to the DNA found on the cap. Thus, there was no basis upon which to object to this testimony. The jury received an instruction regarding the burden of proof on extraneous offenses.

(Doc. 19-50 at 108.)   The state court rejected this claim.

Based on the DNA evidence, it was reasonable for counsel to decide there was no basis for an objection to evidence of the October 11 robbery. In addition, the jury was also instructed during the punishment phase that "if there is any testimony before you in this case regarding the defendant having committed offenses or acts other than the offense alleged against him in the indictment in this case, you cannot consider such testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses or acts, if any were committed." (Doc. 19-12 at 49.)

Petitioner has not shown that the state court's rejection of this claim was an unreasonable application of federal law or an unreasonable determination of the facts. This ground for relief should be denied.

## IV.  EVIDENTIARY HEARING

Upon review of the pleadings and the proceedings held in state court as reflected in the state court records, an evidentiary hearing appears unnecessary.

## V.  RECOMMENDATION

The petition for habeas corpus relief under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

16

**SO ORDERED** this 29th day of August, 2016.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

17